STATE, Respondent, v. COURTNEY, Appellant.

*No. 75–479–CR. Argued October 6, 1976.—*
*Decided December 14, 1976.*
(Also reported in 247 N. W. 2d 714.)

For the appellant there was a brief by *Peickert, Anderson, Fisher, Shannon & O'Brien,* and oral argument by *Thomas W. Bertz,* all of Stevens Point.

For the respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ABRAHAMSON, J. Defendant John Courtney appeals from an order upholding his conviction of violating Wisconsin Administrative Code, sec. Ag 29.12(6), relating to the handling of pesticides and pesticide containers. Three issues are presented:

1. Is Wisconsin Administrative Code sec. Ag 29.12(6) unconstitutionally vague and indefinite?

2. Is the verdict of the jury supported by the evidence?

3. Was the jury improperly instructed on the elements of an offense under Ag 29.12(6)?

FACTS

The facts of this case may be summarized as follows: Defendant Courtney is a pilot engaged in the business of aerial application of chemicals—fertilizers and pesticides of various types—to agricultural crops. At times material to this case, he operated two aircraft out of a leased airstrip in the town of Plover, Portage county. Farmers purchase the chemicals and deliver them to defendant, along with instructions as to the land to be sprayed and as to the quantity of each chemical to be applied per acre. The chemicals are mixed and loaded into the aircraft at the landing strip. Defendant takes care of disposal of

empty chemical containers; they are not retrieved by his customers.

At about 8 p.m. on July 3, 1973, defendant's landing site was visited by Jerry C. Wagner, a State Conservation Warden employed by the Department of Natural Resources, and Kenneth J. Radek, an employee of the Wisconsin Department of Agriculture. The two worked as a team and were assigned the responsibility of inspecting, monitoring and surveying pesticide use in and around Portage county. The two men found a number of empty pesticide containers,[1] uncovered and in more or less of a pile on the ground in the general vicinity of a building used by the defendant as an office and storage room. After approximately fifteen minutes Wagner and Radek left, to return at about 11:30 p.m. for the purpose of confiscating several empty containers as evidence. On neither visit did Wagner and Radek find anyone on defendant's premises. The two men returned to the landing site the following morning. The defendant was present at this time, but the remaining containers still were lying about as they had been the previous night.

Wagner and Radek had had contact with defendant prior to the events of July 3 and 4, 1973. They had visited his landing strip on the preceding June 27th and had found pesticide containers lying about in the open at that time. On June 28th they discussed with the defendant the proper methods of pesticide handling and gave him a copy of ch. Ag 29 of the Wisconsin Administrative Code; the defendant testified at trial that he already had been aware of the regulations and had seven or eight copies on hand.

On July 24, 1973, the complaint in this action was filed; it is based upon conditions found by Wagner and Radek on July 3rd. Defendant was convicted of violating

---

[1] Seventeen empty containers were found. The pesticides involved were Parathion, Difolatan, Sevin, and De Fend E 267.

Ag 29.12(6) following a jury trial, and a fine of $100 was imposed. Defendant appealed this conviction to the circuit court pursuant to sec. 974.01, Stats., and defendant has perfected his appeal to the supreme court from the circuit court's order affirming the conviction.

## VAGUENESS

Wisconsin Administrative Code, sec. Ag 29.12(6), was adopted by the Department of Agriculture pursuant to the authority of sec. 94.69, Stats. So much of the regulation as is relevant on this appeal provides:

"No person shall . . . hold pesticides or their containers for disposal . . . in a manner which may . . . create a hazard to persons or property, including fish or wildlife."

Under sec. 94.71(1), violation of the rule is made a misdemeanor punishable by a fine of not less than $100 nor more than $300 or by imprisonment up to thirty days, or both.

The legislature may constitutionally prescribe a criminal penalty for violation of an administrative rule. *State v. Lambert*, 68 Wis.2d 523, 229 N.W.2d 622 (1975). However, a rule which defines a crime must meet the standards of definiteness applicable to statutory definitions of criminal offenses. The concept of vagueness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication.[2] We have framed the question as follows:

[2] ". . . Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly

"... Is the statute read as a whole so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited by the statute?" *State v. Woodington*, 31 Wis.2d 151, 181, 142 N.W.2d 810, 143 N.W.2d 753 (1966).

*See also State v. Vlahos,* 50 Wis.2d 609, 615, 184 N.W.2d 817 (1971).

The test does not demand that the line between lawful and unlawful conduct be drawn with absolute clarity and precision. "Not every indefiniteness or vagueness is fatal to a criminal statute .... A fair degree of definiteness is all that is required."[3] *Ministers Life & Casualty Union v. Haase,* 30 Wis.2d 339, 362, 141 N.W.2d 287 (1966), *appeal dismissed,* 385 U.S. 205.

The United States Supreme Court, in an often-quoted opinion by Mr. Justice HOLMES, said:

"... Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk." *United States v. Wurzbach,* 280 U.S. 396, 399, 50 S. Ct. 167, 74 L. Ed. 508 (1930).

Again in *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S. Ct. 329, 96 L. Ed. 367 (1952), it was said:

delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 109, 92 S. Ct. 2294, 33 L. Ed.2d 222 (1972).

[3] "... The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S. Ct. 1953, 32 L. Ed.2d 584 (1972).

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

This court has observed in *State v. Evjue*, 253 Wis. 146, 159, 33 N.W.2d 305 (1948):

"It is not violative of due process of law for a legislature in framing its criminal law to cast upon the public the duty of care and even of caution, provided that there is sufficient warning to one bent on obedience, that he comes near the proscribed area."

Thus it is not sufficient to void a criminal statute or regulation to show merely that the boundaries of the area of proscribed conduct are somewhat hazy, that what is clearly lawful shades into what is clearly unlawful by degree, or that there may exist particular instances of conduct the legal or illegal nature of which may not be ascertainable with ease. Before a statute or rule may be invalidated for vagueness, there must appear some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared, or such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the statute or rule.

■ We think that so much of Ag 29.12(6) as the court is here required to judge is sufficiently definite to pass constitutional muster. Defendant does not claim any vagueness as to what substances are considered pesticides, and in any event, the term is defined by statute. Sec. 94.67, Stats. The cause of the hazard—toxicity of pesticides—and the class the rule seeks to protect—persons and property, including fish and wildlife—are apparent. No one could fail to know that "persons" includes children, who cannot be relied upon to recognize and avoid toxic substances or their containers. Wildlife are similarly unequipped to protect themselves from pesticides openly accessible. That the rule speaks to holding of pesticides for disposal, and not merely disposal itself, makes it adequately clear that one may violate the rule by failing adequately to protect persons and wildlife from exposure to pesticides; an affirmative act, such as placing the containers in a school yard or dumping them in a lake, is not necessary for a violation to exist.

■ Defendant argues that the regulation is defective in failing to specify what procedures a pesticide user should follow in holding pesticides or their containers for disposal. This argument is without merit. The legislature or the Department of Agriculture no doubt could have enacted prescriptive regulations and penalized failure to comply therewith, but they need not have done so. The scheme adopted instead is one of proscription, leaving it to the user to hold and dispose of pesticides and their containers in any manner deemed suitable, provided the method chosen does not create a hazard to persons or property. We have recognized that a criminal statute need not set out each of what may be a great number of ways in which the statute may be violated and that it is proper to proscribe conduct "in terms of results which can reasonably be expected therefrom." *State v. Zwicker*, 41 Wis.2d 497, 508, 164 N.W.2d 512 (1969). So long as

the proscribed area is marked out in a fashion discernable to an ordinary person seeking to comply with the regulation, as we have concluded it is, there can be no objection to the method of regulation that the Department of Agriculture has employed.

Where First Amendment rights are not involved—and it is not contended that First Amendment questions are presented by this case—a defendant who challenges the enactment under which he was convicted on grounds of vagueness is limited to the conduct actually charged. Where that conduct is clearly within the prohibited zone, the defendant will not be heard to hypothesize other factual situations which might raise a question as to the applicability of the statute or regulation. *Butala v. State,* 71 Wis.2d 569, 575, 239 N.W.2d 32 (1976); *State v. Driscoll,* 53 Wis.2d 699, 702, 703, 193 N.W.2d 851 (1972); *Jones v. State,* 55 Wis.2d 742, 747, 200 N.W.2d 587 (1972); *Jordan v. De George,* 341 U.S. 223, 71 S. Ct. 703, 95 L. Ed. 886 (1951). Defendant Courtney was charged with leaving a large number of pesticide containers unguarded and uncovered in an unfenced area about 150 feet from a public road. No attempt of any kind to protect or secure the containers was made. The containers were visible from the road, and the defendant's aircraft, objects not unlikely to attract the curious, particularly among the young, were tied nearby. We think the challenged rule adequately warned against this type of conduct. Defendant Courtney's contention that Ag 29.12(6) is unconstitutionally vague cannot be sustained.

## SUFFICIENCY OF THE EVIDENCE

■ Defendant argues that the evidence at trial was insufficient to sustain the verdict, in that the evidence was insufficient to show the existence of a hazard to persons

or wildlife. This court described the standard on review of a jury verdict in *Baldwin v. State*, 59 Wis.2d 116, 121, 122, 207 N.W.2d 630 (1973) :

"In a criminal prosecution if there is any credible evidence which in any reasonable view supports the verdict it cannot be disturbed on appeal. At trial, the state must prove defendant's guilt beyond a reasonable doubt; however, on appeal reversal is warranted only when the evidence considered most favorable to the state and conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to the degree of certitude the law defines as beyond a reasonable doubt." (Citations omitted.)

The evidence at trial was substantially without contradiction in showing that all the pesticides here involved were toxic and dangerous to human and animal life. Undisputed testimony showed that Parathion in particular is one of the most toxic pesticides in use, and a lethal substance capable under some circumstances of causing death by skin contact alone.

The evidence also tended to show, and the jury could have found, that the containers were not enclosed, protected or covered in any manner at times when neither defendant nor his employees were present and that there was no physical impediment to access to the containers by persons or animals. Apparently a "keep out" sign was posted on the premises. However, the class to be protected by the instant rule is broader than the class which can be reasonably counted on to read and obey such a sign. Under the circumstances we think the presence of a "keep out" sign is a matter of minor significance.

The jury also could have found that the containers were located 150 feet from the road and were visible therefrom. There was testimony that considerable traffic moved along this road, including children walking and bicycling along its edge, and that wildlife frequented

the general area of the landing site and occasionally were seen on the site itself. Two witnesses testified that because of their chemical content pesticides may have a taste attractive to animals.

Ag 29.12(6) penalizes holding containers for disposal in a manner which may create a hazard to persons or property, including fish or wildlife. "Hazard" in this context means a possible source of peril or danger.[4] The jury must find that persons and wildlife were exposed to a source of peril or danger. The jury was not required to find that injury to persons or wildlife had actually occurred. There was more than a mere theoretical or miniscule possibility of injury or death. Credible evidence established that containers used for toxic and dangerous pesticides were left unguarded and were freely accessible to persons and wildlife shown to be present in the area. The verdict of the jury has support in the evidence and is therefore sustained on this appeal.

We do not accept defendant's argument that certain inconsistencies in Wagner's and Radek's testimony regarding the existence of a hazard rendered their testimony incredible. These inconsistencies were generated by defendant's cross-examination of the two men as to why, if there was a hazard, they saw fit to leave most of the containers unguarded overnight. The jury heard all of the evidence and resolved the issue of credibility against the defendant. Even where a single witness makes contradictory statements it remains for the jury to choose which version, if either, to believe. *Graves v. Travelers Ins. Co.,* 66 Wis.2d 124, 136, 137, 224 N.W.2d 398 (1974).

## JURY INSTRUCTIONS

Defendant contends that the trial court erred in instructing the jury on the elements of an offense under Ag 29.12(6) by including the following:

---

[4] Webster's Third New International Dictionary (1961).

"[Y]ou must find beyond a reasonable doubt that pesticides and their containers were actually left lying around unattended and out in the open, without any protection or covering . . . ."

It is true that the instruction complained of is not based upon any of the language in Ag 29.12 (6). However, the trial court did not instruct the jury that they could convict upon finding *only* "that pesticides and their containers were actually left lying around unattended and out in the open, without any protection or covering." Rather, the effect of the instruction was to require such a finding *in addition* to the elements based upon the language of the rule as to which the jury was adequately charged.

██ ██ The general rule is that errors in giving instructions to the jury will not warrant reversal unless it reasonably appears that without the error, the result in the trial probably would have been different. *Werner v. State,* 66 Wis.2d 736, 750, 226 N.W.2d 402 (1975). It should be noted that the error here was favorable to the defendant. No harm can have been done to the defense. Defendant's objection to the jury instructions is without merit.

*By the Court.*—Order affirmed.