STATE of Wisconsin, Plaintiff-Respondent,

v.

Ernest J. MAHONE, Defendant-Appellant. †

Court of Appeals

*No. 84–1533–CR. Argued August 15, 1985.—Decided November 20, 1985.*
(Also reported in 379 N.W.2d 878.)

† Petition to review denied.

364

For the defendant-appellant, there was a brief by *Andrew Mishlove* of Glendale. Oral argument by *Andrew Mishlove.*

For the plaintiff-respondent, there was a brief by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general. Oral argument *Sally L. Wellman,* assistant attorney general.

Before Scott, C.J., Nettesheim, J., and Robert W. Hansen, Reserve Judge.

NETTESHEIM, J. This is an appeal from an order of March 9, 1984, revoking Ernest J. Mahone's conditional release, previously granted under sec. 971.17(2), Stats., and recommitting Mahone under sec. 971.17(3).

Upon appeal, Mahone raises various constitutional challenges to sec. 971.17(3), Stats. We reject these arguments and conclude that the statute is constitutional on its face and as applied against Mahone in these proceedings. We also reject Mahone's claim that a finding of present mental illness is necessary in a sec. 971.17(3) revocation/recommitment proceeding. We further reject Mahone's claims that improper evidence was admitted at his revocation/recommitment hearing. Finally, we reject Mahone's contention that the conditions of supervision imposed against him during his conditional release were invalid. Therefore, we affirm the recommitment order.

On March 13, 1981, Mahone was charged with burglary, contrary to sec. 943.10(1)(a), Stats., and operating an automobile without the owner's consent, contrary to sec. 943.23(2), Stats. Following a *McCredden* hearing, Mahone was committed for a thirty-day (subsequently extended for an additional thirty days) examination as to competency to stand trial, pursuant to sec. 971.14(2), Stats. On June 3, 1981, Mahone was found not competent to stand trial and was committed pending recovery, under sec. 971.14(5).

On October 15, 1981, Mahone was found to have recovered his competency to stand trial. Pursuant to a plea agreement, he was found not guilty by reason of mental disease or defect and was further found to be a present danger to others. Mahone was, accordingly, committed to the Winnebago state hospital, pursuant to sec. 971.17(1), Stats.

On May 28, 1982, upon his petition, Mahone was granted a conditional release, pursuant to sec. 971.17(2), Stats. He was placed under supervision of the Bureau of Community Services, Wisconsin Department of Health

and Social Services, and subjected to court and department conditions of supervision.

On January 4, 1984, Mahone petitioned the trial court for an absolute discharge pursuant to sec. 971.17(2), Stats. An initial hearing was held upon Mahone's petition for unconditional release on January 16, 1984. This hearing was continued to February 3 to allow for a further mental examination of Mahone.

During the interval, however, the department received information that Mahone, while babysitting, had placed a rope around the neck of a seven-year-old child and hung the child from a towel rack in a bathroom. Based upon this information, Mahone was ordered detained upon an administrative hold issued by the department. On February 6, 1984, a hearing was held to determine if probable cause existed to detain Mahone for this alleged violation. Following this hearing, Mahone was ordered held. At the conclusion of the final hearing on March 9, 1984, the trial court ordered Mahone recommitted.

*Sec. 971.17(3), Stats., and Due Process*

Mahone first asserts that his recommitment is void because sec. 971.17(3), Stats., by its own terms, affords no due process protections. Section 971.17(3) provides:

> If, within 5 years of the conditional release of a committed person, the court determines after a hearing that the conditions of release have not been fulfilled and that the safety of such person or the safety of others requires that his conditional release be revoked, the court shall forthwith order him recommitted to the department, subject to discharge or release only in accordance with sub. (2).

The statute does not, on its face, prescribe procedural due process. However, appellate courts may construe constitutionally deficient statutes to include constitutionally required provisions. *See State ex rel. Matalik v. Schubert,* 57 Wis.2d 315, 327, 204 N.W.2d 13, 18–19 (1973). We do so here in order to salvage the statute.

Before we can address Mahone's various constitutional challenges, we must first determine what minimum due process protections govern a recommitment proceeding under sec. 971.17(3), Stats. These are not recited in the statute, nor have they previously been addressed by the appellate courts of this state.

Consideration of what procedures due process requires under a given set of circumstances begins with a determination of the precise nature of the government function involved as well as of the private interest that is affected by governmental action. *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). We must balance these interests and considerations in order to determine the minimum requirements of due process appropriate for the circumstances. *Vitek v. Jones,* 445 U.S. 480, 495 (1980). The state argues that those due process protections afforded to an alleged probation or parole offender whose conditional liberty is sought to be revoked should also apply to an insanity acquittee such as Mahone whose conditional release is sought to be revoked. We agree.

Although obvious distinctions exist between a conditionally released insanity acquittee and a defendant on probation or parole, these do not go to the competing governmental and individual interests at stake when considering the extent of due process protections required. For this reason, we see the balancing process applied by the United States Supreme Court in *Morrissey* as equally applicable here.

The compelling interest of the state in seeking the revocation of a parole or probation offender is the protection of society from one who has already committed a

crime when such person has demonstrated that he cannot be safely retained in the community. Just as the release of a parolee before the end of his prison sentence is made with recognition of the risk that the offender might not be able to live in society without committing additional anti-social acts, *see Morrissey* at 483, so also with a conditionally released insanity acquittee. Such a person has been found to have committed all the requisite elements of a criminal offense. His or her mental instability raises a legitimate concern for societal safety and signals a risk of the commission of additional anti-social acts. *See Morrissey* at 483.

As to the private interest affected by the governmental action, we see the conditional liberty interest of a probationer or parolee as identical to those of a conditionally released insanity acquittee. Moreover, society also holds a stake in assuring due process protections to those facing revocation of conditional liberty. *Morrissey* at 484.

██

Given these similar competing interests, we see no reason to fashion a different set of procedural due process rules for insanity acquittees in a recommitment proceeding than those already fashioned for probationers or parolees in a revocation of probation or parole proceeding. These minimum requirements of due process include: (1) an initial hearing to justify detention pending a final commitment hearing; (2) written notice of the claimed violation; (3) disclosure of the evidence against the subject; (4) an opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (6) a neutral and detached hearing body, and (7) a written statement by the fact-finder(s) as to the evidence relied upon and reasons for revocation of the conditional discharge. *Morrissey* at 485–89.

## Due Process in This Case

Having now fixed the minimal due process requirements for a recommitment hearing under sec. 971.17(3), Stats., we proceed to address Mahone's specific constitutional claims.

Mahone claims a due process deprivation in the absence of a written notice of time, place and nature of the claim. It is undisputed that Mahone was not provided with written notice. Minimal due process requires such notice. *See Morrissey* at 489. Here, Mahone, as a conditionally released insanity acquittee, initiated the proceedings by seeking an absolute release. Upon learning of the rope incident involving the young child, the state countered Mahone's petition for an absolute discharge by seeking revocation of Mahone's conditional release and recommitment to a mental institution. Following two preliminary-type hearings as to probable cause and interim detention, the revocation/recommitment hearing was held.[1] At all stages and at all proceedings Mahone was present and represented by counsel. At no time was a complaint of lack of written notice made nor an objection to the proceedings registered. In fact, at the start of the recommitment hearing, Mahone's counsel stated that Mahone was ready to proceed.

No claim is made here that Mahone was unaware of the basic charges or that he did not know the time, place and purpose of the several hearings held. Indeed, when he was initially detained upon the administrative hold of the department, Mahone, together with his attorney, appeared before the trial court. At this proceeding, Mahone

---

[1] The trial court apparently was of the initial impression that the probable cause/final hearing procedure did not apply to a conditional release revocation/recommitment hearing. However, the trial court ultimately accorded Mahone all the constitutionally required hearings.

371

was advised that the state would be seeking revocation of his conditional release. Based upon this representation, the trial court scheduled the matter for February 6. Thus, Mahone was given *personal, actual and advance* notice in open court of the department's intentions and of the probable cause hearing scheduled for February 6. Mahone therefore had the benefit of an extra court appearance, not constitutionally mandated, by which he personally received the minimal notice required for such hearings. *See Morrissey* at 486–87.

■

With such full participation by Mahone and his counsel in all proceedings, there can be no claim that the absence of written notice was prejudicial. To find an unconstitutional deprivation of right to notice on this record would exalt form over substance. On the facts of this case, we see no probability that the absence of formal notice had a prejudicial effect. *See State ex rel. Flowers v. Department of Health & Social Services,* 81 Wis.2d 376, 395, 260 N.W.2d 727, 737–38 (1978).[2]

■

Mahone next contends that the formal rules of evidence should have applied at his recommitment hearing. We disagree. For the reasons stated above, likening this procedure to a probation or parole revocation proceeding, we see no reason to graft the formal rules of evidence upon a recommitment proceeding. *See State ex rel. Thompson v. Riveland,* 109 Wis.2d 580, 585, 326 N.W.2d 768, 771 (1982).[3]

---

[2] The fact that after the probable cause hearing Mahone had over a month in which to prepare his case strengthens this conclusion.

[3] Mahone raises two additional constitutional issues. He claims a constitutional right to a jury trial at a revocation/recommitment proceeding and also contends that the appropriate burden of proof upon the state when seeking recommitment is the "beyond a reasonable doubt" standard. Both claims were withdrawn by Mahone's counsel at the time of the oral argument. Thus, we need not discuss these issues.

*Vagueness*

██
Mahone's next claim is that sec. 971.17(3), Stats., is unconstitutionally vague, thus depriving him of meaningful notice. He first argues that a hypothetical failure to comply with an allegedly vague therapeutic condition of release violates this constitutional principle. However, one who makes a vagueness challenge is limited to the conduct actually charged and will not be heard to hypothesize other situations which might arguably raise a vagueness question. *See State v. Courtney,* 74 Wis.2d 705, 713, 247 N.W.2d 714, 719 (1976). The specific condition of Mahone's conditional release which was violated required that Mahone avoid all conduct that violated the law. We fail to see in this language any suggestion of vagueness or uncertainty such that one is not reasonably put on notice as to conduct which might offend the condition. *See State v. Woodington,* 31 Wis.2d 151, 181, 142 N.W.2d 810, 825, *reh'g denied,* 31 Wis.2d 183a, 143 N.W.2d 753 (1966), *appeal dismissed,* 386 U.S. 9 (1967). To the contrary, we see the language as clearly and unambiguously stating that a violation of the law may trigger a loss of conditional release.

Mahone next contends that the revocation criteria of the statute are vague. The statute provides that the court shall revoke conditional release if it finds "that the conditions of release have not been fulfilled and that the safety of such person or the safety of others requires that his conditional release be revoked." Sec. 971.17(3), Stats. Here again, we conclude that the statute is not so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited. *See Woodington* at 181, 142 N.W.2d at 825.

The test for vagueness does not demand that the line between lawful and unlawful conduct be drawn with absolute clarity and precision. *Courtney* at 710, 247 N.W.2d at 718. Not every indefiniteness or vagueness is fatal to a criminal statute; a fair degree of definiteness is all that is required. *Id.* We conclude that the statutory requirement that a showing be made that conditions of release have not been fulfilled and that the safety considerations are not met state constitutionally acceptable criteria for revocation of conditional discharge.

### Dangerousness as a Standard for Recommitment

Mahone next claims that the dangerousness standard utilized by the trial court is unconstitutional as violative of the due process and cruel and inhuman punishment clauses. He claims that the legislature intended to require proof of present mental illness in a sec. 971.17(3), Stats., recommitment proceeding. Since this was not proven, Mahone claims his conditional release revocation and recommitment is invalid.

As foundation for this contention, Mahone first notes that sec. 971.17(2), Stats., dealing with the conditional release of an insanity acquittee uses the term "danger to himself or herself or to others." Mahone then observes that the recommitment statute in subsec. (3) speaks in terms of "safety of such person or the safety of others." Mahone reasons that the term "safety" is broader than "danger." From this distinction, Mahone reasons that the legislature intended that a finding must be made as to the present mental state of a conditional releasee before recommitment may legally occur. We disagree.

We find no such significant difference between the reference to "danger to others" in subsec. (2) and the reference to "safety of others" in subsec. (3) and certainly not one warranting our grafting onto subsec. (3) a require-

ment of present mental illness as an added requirement for recommitment of a conditionally released insanity acquittee. Section 971.17(3), Stats., requires for recommitment only that: (1) the conditions of release have not been fulfilled, and (2) the safety of such person or the safety of others requires revocation of the conditional release. We see no constitutional infirmity in this two-fold statutory requirement for recommitment of a conditionally released insanity acquittee.

The reasoning and rationale of *State v. Gebarski,* 90 Wis.2d 754, 280 N.W.2d 672 (1979), are persuasive here. In *Gebarski,* our supreme court concluded that "the legislature did not intend to impose the civil commitment standards as standards on re-examination of defendants pursuant to sec. 971.17(2)" and that "the standard on recommitment for those found not guilty by reason of mental disease or defect is the standard of dangerousness." *Id.* at 768, 769, 280 N.W.2d at 678. As to reexaminations under sec. 971.17(2), Stats., the supreme court, in *Gebarski,* concluded that "[o]n re-examination, our statutes very properly set the standard of dangerousness as the criteria by which eligibility for release or further care and treatment is to be determined." *Id.* at 773, 280 N.W.2d at 680.

If a finding of present mental illness (or lack of same) is not necessary in a reexamination/recommitment proceeding under subsec. (2), when the statute does not expressly require it, we fail to see why it becomes necessary in a subsec. (3) revocation/recommitment proceeding when the statute also does not expressly require it. If subsec. (2) denies conditional release to an insanity acquittee only upon proof of present dangerousness, irrespective of present mental state, we conclude a recommitment proceeding should address the same consideration, irrespective of present mental condition.

Consistent with this approach, a determination to conditionally or absolutely release an insanity acquittee

under subsec. (2) does not require a concurrent finding of no present mental illness. Such a requirement would impose too strict a curtailment upon the conditional liberty interest of insanity acquittees and would fail to recognize that many mentally ill citizens (even those acquitted by reason of mental disease or defect) can function without the necessity of institutionalization. In other words, the focus of the inquiry at any stage of post-commitment proceedings under sec. 971.17, Stats., is properly upon the concept of dangerousness. What was said in *Gebarski* as to sec. 971.17(2) reexamination/recommitment proceedings should apply to revocation/recommitment proceedings under sec. 971.17(3). We find no violation of due process rights in the procedure or substance of sec. 971.17(3).

█ As to the claim of cruel and unusual punishment, mental illness has become an issue in this case only because Mahone has chosen to inject it as a defense and has prevailed as to its proof. As such, the insanity acquittee is not conventionally punished but rather is committed to a mental health facility until he or she is no longer dangerous. Moreover, a defendant who prevails in a defense of mental disease or defect is not indefinitely committed. Establishing non-dangerousness can result in conditional release, absolute discharge or avoiding recommitment. *See* sec. 971.17(2) and (3), Stats. Additionally, when the maximum period for which an insanity acquittee could have been imprisoned if convicted of the offense has elapsed, discharge is mandated subject to the right of the department to initiate involuntary commitment proceedings. *See* sec. 971.17(4). Thus, the evil condemned in *Jackson v. Indiana,* 406 U.S. 715 (1972), involving the indefinite commitment of one who may never regain competency to stand trial, is not present.[4]

---

[4] Moreover, the United States Supreme Court observed in *Jackson* that "[a]t the least, due process requires that the nature and duration

We are persuaded by the reasoning of *Harris v. Ballone*, 681 F.2d 225, 228 (4th Cir. 1982), wherein the court held that dangerousness is an acceptable test for the continued detention of an insanity acquittee:

> As for the fourth claim, it is established that a person may not be incarcerated solely because he is insane (at least in the absence of any showing that an involuntary confinement is necessary to ensure his own survival or safety or to alleviate or cure his illness), *see O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), but we face the different question of whether a person may be incarcerated solely because he is dangerous. We hold that it is not a denial of due process for a person who has committed a criminal act to be incarcerated as long as he is considered dangerous. . . . Again, we think that the fact that an insanity acquittee has already been shown beyond a reasonable doubt to have committed at least one dangerous act justifies the distinction Virginia has drawn. *See United States v. Ecker,* 543 F.2d 178 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) (upholding the use of a different standard for determining if insanity acquittees should *remain* committed than is used for other committed persons).

Thus we reject all of Mahone's constitutional challenges to the statute.

## Evidentiary Rulings

Mahone next claims the trial court erred in admitting certain hearsay evidence at the recommitment hear-

---

of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. at 738. Here, it cannot be argued that dangerousness does not bear some "reasonable relation" to the purpose for which Mahone was both initially committed and subsequently recommitted.

ing.[5] We need not resolve this issue nor the disagreement between the state and Mahone as to whether the statements are admissible hearsay because no objection was made to this testimony at the time of the hearing. Therefore, the right to raise this issue on appeal was waived. *State v. Peotter,* 108 Wis.2d 359, 366, 321 N.W.2d 265, 268 (1982); *see also In re Spring Valley Meats, Inc.,* 94 Wis.2d 600, 605–06, 288 N.W.2d 852, 854 (1980).

Mahone also objects to "consideration of a report submitted to the court by Dr. Al Haque of the Winnebago State Hospital." This report of February 14 is the last of an entire series of medical reports received by the trial court and counsel in this case. The trial court referred to these as "a ream of reports and mental exams" and as "a stack of psychological reports." The trial court explained that the procedure followed in this case, as in others, required that whenever any inmate petitioned for reexamination, the department was to forward the petition to the trial court, and "they should attach to it and along with it . . . the most recent exam of the person so we can all review it and have something to go on as far as setting up a hearing or deciding what to do." As to this February 14 report, Mahone's trial counsel stated: "I received a copy attached to a notice for a court appearance and a petition by Mr. Mahone."[6] The trial court noted that such department reports are "brought into this court or mailed in here in triplicate or greater. I keep one. I forward one to the Public Defender's Office and one to the D.A.'s office,

---

[5] The claim is that evidence adduced at the recommitment hearing included "inadmissible hearsay, some of which was unsworn and not of record." Mahone and the state disagree as to whether the testimony at issue constitutes "hearsay" or an "excited utterance." This testimony concerns the statements of the babysitter as to what the child told her regarding Mahone's actions. The child's statement was made immediately after the incident, while the rope was still around the child's neck.

[6] This appears to be a reference to Mahone's petition for an unconditional release.

schedule the matter for hearing, and based upon the review by defense counsel . . . sometimes they're taken off."

With these triplicate copies going to the court, the state and the defense counsel, pursuant to standard procedure, it follows that all three persons involved—the judge, the prosecutor and the defense counsel—knew, when the medical report of February 14 of Dr. Haque reached them, that the other two had received or were receiving a copy along with Mahone's petition.

Moreover, the delivery of the February 14 report of Dr. Haque to the court was precipitated by Mahone's own petition for unconditional release. The trial court explained that, pursuant to its standard procedure, any inmate petitions for reexamination are to be accompanied by a report of the most recent examination of the inmate. Thus, Mahone's own actions occasioned the trial court's exposure to the very report about which Mahone now complains. If there were a need or desire for Mahone to object to the contents of the report or the trial court's exposure to it, Mahone should have done so at some point prior to the trial court rendering its opinion. Therefore, we conclude that Mahone waived the right to raise this issue on appeal. *Peotter,* 108 Wis.2d at 371, 321 N.W.2d at 270.

Even if Mahone's counsel had timely objected to the February 14 report, reversal of the recommitment order does not follow. The primary issue at the recommitment hearing was Mahone's claimed "dangerousness"— whether "the safety of others requires that his conditional release be revoked." Sec. 971.17(3), Stats. Here, it is clear that Mahone's conduct while on conditional release controlled the result of the recommitment hearing. It was not necessarily what others had to say about him that required Mahone's recommitment to the mental institution; it was what Mahone had done. As the trial court stated in its opinion, "tying a rope around a young boy's neck and hanging him in the bathroom by his neck be-

379

cause he was crying, I think, is certainly indicative of a danger to others, if not himself."

## Conditions of Release

Mahone next claims that the conditions of discharge imposed during his period of conditional release were invalid. Specifically, he objects to the imposition of "conditions of release identical in all respects to the conditions of probation or parole imposed on a convicted criminal."

The trial court placed Mahone under the supervision of the Bureau of Community Services, Wisconsin Department of Health and Social Services "subject to the rules and conditions of supervision." On three separate occasions, Mahone signed a standard department form which set forth the usual rules of supervision prescribed by the department for parolees and probationers. We disagree with Mahone's contention that these rules are only punitive in nature and thus inappropriately applied to conditionally released insanity acquittees. These rules properly supplemented the conditions as to medical treatment set by the trial court and were intended to aid in Mahone's rehabilitation as well as assist the department in monitoring Mahone's conduct.

Although Mahone finds support for his argument in cases from a few jurisdictions, *see, e.g., Scheidt v. Meredith,* 307 F. Supp. 63 (D. Colo. 1970), these collide with Wisconsin's perception of a conditionally discharged insanity acquittee. We have discussed above the substantial public safety interests which pertain to the decision to conditionally discharge or recommit an insanity acquittee. *State v. Field,* 118 Wis.2d 269, 282–83, 347 N.W.2d 365, 372 (1984), recognized a similar concern:

> Similarly, when a defendant is committed pursuant to sec. 971.17(1), Stats., he or she has already been found beyond a reasonable doubt to have committed a

criminal act, which is unquestionably conduct outside the range of acceptable behavior. . . . In addition, the fact that a person who has been found not guilty by reason of mental disease has committed a criminal act *demonstrates a degree of dangerousness to society that may be lacking in the actions of one who is civilly committed.* [Emphasis added.]

Thus, we find no impropriety in the conditions set by the trial court or the rules prescribed by the department regulating Mahone's conduct as a conditionally released insanity acquittee. We find no reason to disturb the trial court finding that these conditions and regulations were breached by Mahone and that the "safety of others" required his recommitment under sec. 971.17(3), Stats.

*By the Court.*—Order affirmed.[7]

---

[7] The state raises a question as to whether this appeal was timely filed. In so doing, it raises the question of whether appeals from recommitment orders are governed by Rule 809.30, Stats., governing appeals in felony cases or sec. 808.04, Stats., governing appeals in civil cases.

If Mahone is governed by sec. 808.04, Stats., his appeal is untimely. Moreover, the time for filing a notice of appeal under sec. 808.04 may not be enlarged. *See* sec. 809.82(2)(b), Stats. Enlargement of the time for filing a notice of appeal under Rule 809.30, Stats., is permitted. *Id.* Although the record in this case does not reveal whether Mahone pursued his appeal in a proper manner under Rule 809.30 by requesting transcripts or a public defender within the applicable time limits, we, on our own motion, enlarge the time for Mahone to file his appeal in this case to the date of such filing.