SHIRLEY S. ABRAHAMSON, J.
¶ 55. (dissenting). The instant case concerns the interpretation of the phrase "computerized communication system" in *476 Wis. Stat. § 948.075(lr) (2013-14)[1] and its application to Rory McKellips' exchange of phone calls, voicemails, and text messages with a minor, C.H.
¶ 56. McKellips was charged with repeated sexual assault of a child, exposing genitals or pubic area, obstructing an officer, and use of a "computerized communication system" to facilitate a child sex crime.
¶ 57. The jury acquitted McKellips of the sexual assault and exposure counts.[2] Even though the jury did not find McKellips guilty of a child sex crime, the jury found McKellips guilty of using a "computerized communication system" to facilitate a child sex crime. McKellips challenges this conviction in the instant case.[3]
¶ 58. The statute defining this crime, Wis. Stat. § 948.075, provides (in relevant part) as follows:
(lr) Whoever uses a computerized communication system to communicate with an individual who the actor believes or has reason to believe has not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual in violation of s. 948.02 (1) or (2) is guilty of a Class C felony.
*477 (3) Proof that the actor did an act, other than use a computerized communication system to communicate with the individual, to effect the actor's intent under sub. (lr) shall be necessary to prove that intent.
¶ 59. The phrase "computerized communication system" is not defined in this statute or in any other statute. I disagree with the majority's interpretation of this phrase.
¶ 60. I address two issues raised by McKellips:
I. He argues that Wis. Stat. § 948.075 is unconstitutionally vague because it does not provide fair warning of the conduct it prohibits or provide objective standards for the statute's enforcement. In other words, he asserts that the statute is void for vagueness. See State v. Popanz, 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983); see also Johnson v. United States, 135 S. Ct. 2551, 2556 (2015). I conclude that § 948.075 does not pass muster under this test in two respects:
A. The ambiguity of the phrase "computerized communication system," the minimal guidance provided by the statutes, and the need for expert testimony regarding the functioning of various communication systems demonstrate that Wis. Stat. § 948.075 does not provide fair warning of what is prohibited to persons of ordinary intelligence.
B. The jury instruction regarding "computerized communication system" misstated the law. The erroneous instruction demonstrates that Wis. Stat. § 948.075 lacks objective enforcement standards.
II. After this court granted review in the instant case, McKellips requested (in a filing he charac *478 terized as either a petition for review or a motion) that this court release him from incarceration pending this review of the court of appeals' ruling in his favor. The issue of his release from incarceration is now moot given today's decision of this court. The issues McKellips raises, however, merit review.
The majority opinion (at n.8) denies the petition for review (or motion) in a footnote and a separate order. Neither provides any explanation. Although this issue is moot, I would have had the court address it.
¶ 61. Accordingly, I would affirm the decision of the court of appeals reversing the judgment of conviction, although on different grounds than those relied upon by the court of appeals.
¶ 62. Therefore, I dissent and write separately.
HH
¶ 63. The majority opinion concludes that Wis. Stat. § 948.075 is not void for vagueness because the phrase "computerized communication system" is "readily understandable by a person of ordinary intelligence" and "capable of objective enforcement."[4]
¶ 64. General principles underlying the void for vagueness doctrine put the instant case into legal focus.
f 65. The United States Supreme Court has explained the doctrine as follows: "The prohibition on vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of *479 fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.' "[5]
¶ 66. The Court has further stated: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids."[6]
¶ 67. Although "[t]here is no simple litmus-paper test to determine whether a criminal statute is void for vagueness,"[7] a statute may be void for vagueness if it does not (1) "give a person of ordinary intelligence who seeks to avoid its penalties fair notice of conduct required or prohibited";[8] or (2) "provide standards for those who enforce the laws and those who adjudicate guilt."[9]
*480 ¶ 68. This latter prong has been characterized as "the more important aspect of [the] vagueness doc *481 trine,"[10] and is implicated when, among other things, "the law [is] so unclear that a trial court cannot properly instruct the jury."[11]
¶ 69. The United States Supreme Court summarized the rationale of the void for vagueness doctrine in Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972):
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications (footnotes omitted).
f 70. These important values are implicated in the instant case.
f 71. Without further legislative elucidation, the phrase "computerized communication system" in Wis. Stat. § 948.075 does not provide fair notice of the conduct it prohibits. Perhaps the truth of this statement is best illuminated by the fact that both the defendant and the State took varying positions on the meaning of the phrase over the course of this case.
*482 ¶ 72. The majority opinion attempts to provide a definition of "computerized communication system" by referring to the dictionary.
¶ 73. The majority's "plain meaning" approach entails locating the dictionary definitions of the three little words — "computerized," "communication," and "system"[12] — asserting that " 'computerized communication system' is [not] a special or technical term."[13]
¶ 74. Thus, the majority opinion examines not only the phrase "computerized communication system" in isolation, but also examines each word in isolation, before combining the separate dictionary definitions of each word into a single "plain meaning" of the phrase "computerized communication system." Majority op., ¶¶ 33-34.
¶ 75. The majority opinion's efforts at defining these "three little words" — "computerized communication system" — in isolation defy common English usage and common sense. Sometimes "no other words can tell it half so clearly" as an entire phrase.[14]
¶ 76. Take, for example, the phrases "smart phone," "local area network," "chat room," or "hard drive," all phrases used in discussing technology. Defining each word in these phrases separately yields a definition that gives little or no insight into what the phrase — the words taken together — actually means.
*483 ¶ 77. I do not agree with the majority opinion that a commonly understood, "plain" meaning of the phrase "computerized communication system" exists. I agree with the court of appeals that the text and context of Wis. Stat. § 948.075 demonstrate that the phrase "computerized communication system" has a particular meaning in the statutes.[15] A court gives such terms their "technical or special definitional meaning . . . ."[16]
¶ 78. I further disagree with the majority opinion's failure to read Wis. Stat. § 948.075 in context. When interpreting a statute, a court looks to the context in which statutory language is used, " 'not. . . at a single, isolated sentence or portion of a sentence' . . . ,"[17]
¶ 79. I would read this statute in context with two other statutes, Wis. Stat. §§ 947.0125 and 48.825, both of which use the phrase "computerized communication system." The parties agreed in the court of appeals that the phrase "computerized communication system" has the same meaning in all the statutes in which the legislature uses the phrase. See State v. McKellips, 2015 WI App 31, ¶ 12, 361 Wis. 2d 773, 864 N.W.2d 106.
*484 ¶ 80. These statutes use the phrase "computerized communication system" as a term of art, with a particular definition illuminated (albeit hazily) by their language and context.
¶ 81. First, Wis. Stat. § 947.0125, entitled "Unlawful use of computerized communication systems" and enacted before the statute at issue in the instant case, provides (among other things) that any person who "[k]nowingly permits or directs another person to send a message prohibited by this section from any computer terminal or other device that is used to send messages on an electronic mail or other computerized communication system and that is under his or her control" is subject to a Class B forfeiture.[18]
¶ 82. As the court of appeals reasoned,
Wis. Stat. § 947.0125 informs the definition of "computerized communication system" in two ways. First, we know that one example of using such a system is sending email messages. Second, paragraph (3)(g) informs us that a computer or other device, i.e., hardware, cannot itself constitute a computerized communication system because that paragraph distinguishes the two.[19]
¶ 83. Second, Wis. Stat. § 48.825 also uses the phrase "computerized communication system" without defining it. This statute prohibits certain kinds of advertising for purposes of adoption.[20]
¶ 84. Section 48.825(l)(a) defines "advertise" to mean "to communicate by any public medium that originates within this state, including by newspaper, *485 periodical, telephone book listing, outdoor advertising sign, radio, or television, or by any computerized communication system, including by electronic mail, Internet site, Internet account, or any similar medium of communication provided via the Internet."
¶ 85. In Wis. Stat. § 48.825(l)(c), "Internet account" is defined as "an account created within a bounded system established by an Internet-based service that requires a user to input or store access information in an electronic device in order to view, create, use, or edit the user's account information, profile, display, communications, or stored data."
¶ 86. As the court of appeals explains, Wis. Stat. §§ 48.825 and 947.0125 inform the definition of "computerized communication system" in two similar ways:
First, we know that use of such a system includes all of the examples and the category listed in the statute. Second, because [§ 48.825](l)(c) distinguishes between the "internet account" example of computerized communication system and the "electronic device" used to access it, we know that the device itself cannot constitute such a system.[21]
¶ 87. In sum, I agree with the court of appeals that, based on the ways in which the legislature has used the phrase "computerized communication system," the phrase "is a legislative term of art. . . ."[22]
A
¶ 88. Aside from telling us (1) that e-mail is an example of a computerized communication system; and (2) that a "computerized communication system" *486 cannot be hardware or a device, the statutes and case law contain nothing that provides additional clarity as to what constitutes a "computerized communication system" in Wis. Stat. § 948.075.[23]
f 89. As the State acknowledged at oral argument, expert testimony was necessary in the instant case to establish that the defendant's use of a cellphone constituted use of a "computerized communication system."
f 90. Although expert testimony is often admitted in criminal cases and can aid the jury in applying the law on which it is instructed, the need for expert testimony in the instant case (and other cases under Wis. Stat. § 948.075) demonstrates the lack of fair warning provided by the statute.
¶ 91. The following two exchanges from oral argument illustrate the problem. The first exchange was with me:
Justice Abrahamson: Suppose they just use voice-mail? Does that fit within the statute?
Assistant Attorney General: I think it probably does.
Justice Abrahamson: Well, it either does or it doesn't. Why do you say "probably"?
AAG: Well, because I don't have the facts here and I don't have an expert testifying as to how that works with voicemail.
f 92. Later, a similar exchange occurred with Justice Gableman:
*487 Justice Gableman: It seems to me that when I read the briefs, it seems to me the state is asking us to assume a number of things. You [stated previously] well maybe there's someplace that still uses a switchboard. I have no idea how the telephone company works .... Aren't you asking us to assume an awful lot? Assume that by using a TracFone to call another person that that device has become transformed into a computer? Let's start with that.
AAG: No. Well, I mean, I am because that was what the expert testified to. ... If we were talking about a land phone like that then there would be an expert saying it's a phone like this and then the jury would say well that's not....
Justice Gableman: So say he used the phone. Say there are no text messages, say there are no photographs and ... it was solely by voice by a call and it was solely a verbal communication.... Is that the facilitation of a sex crime by use of a computerized communication system?
AAG: Well and there's another overt act, perhaps .... It could be perhaps, but you have to have presumably an expert testifying that there is some computer involved in that computerized communication system. ...
f 93. These exchanges expose the failure of Wis. Stat. § 948.075 to provide fair notice to persons of ordinary intelligence of the prohibited conduct. If expert testimony regarding the internal functioning of a land line telephone (for example) is necessary to determine whether its use constitutes a "computerized communication system," then how does Wis. Stat. § 948.075 "give [a] person of ordinary intelligence a *488 reasonable opportunity to know what is prohibited, so that he may act accordingly?"[24]
¶ 94. Persons of ordinary intelligence have no idea how cellular phones (or land line phones) function. Likewise, persons of ordinary intelligence do not know whether the various uses of TracFones in the instant case constitute use of a "computerized communication system."
¶ 95. Wisconsin Stat. § 948.075 is not "addressed to those in a particular trade or business" in which the "terms used have a meaning well enough defined to enable one engaged in that trade or business to apply it correctly."[25]
¶ 96. Rather, Wis. Stat. § 948.075 is generally applicable, and ordinary persons in the public do not know whether by using a particular device in a particular manner, they may be using a "computerized communication system."
¶ 97. As the court of appeals recognized in Town of East Troy v. Town & Country Waste Service, Inc., 159 Wis. 2d 694, 707, 465 N.W.2d 510 (Ct. App. 1990), when the meaning of a statute varies from case to case *489 based on expert testimony, "it raises serious constitutional vagueness questions."
¶ 98. The State's argument in the instant case raises the same problems. If, as the State contends, expert testimony is necessary to know whether Wis. Stat. § 948.075 applies, then Wis. Stat. § 948.075 does not give fair warning of the conduct it prohibits.
B
¶ 99. I now consider the jury instructions in the context of whether Wis. Stat. § 948.075 provides objective enforcement standards. In reversing the judgment of conviction in the instant case, the court of appeals examined the circuit court's jury instructions regarding Wis. Stat. § 948.075. The question is whether Wis. Stat. § 948.075 is "so unclear that a trial court cannot properly instruct the jury"[26] and therefore unconstitutionally vague.
f 100. In the instant case, the circuit court correctly instructed the jury by reciting the elements of Wis. Stat. § 948.075. Then the circuit court apparently attempted to explain what the statutory phrase "computerized communication system" means.
¶ 101. The circuit court stated as follows:
Evidence has been received that the defendant communicated with a child under the age of 16 via a mobile or cellphone. You must determine whether the phone described in the evidence constitutes a computerized communication system.
To aid you in that determination, you are instructed that under Wisconsin law, a computer is defined as— computer is defined as computer, which means an *490 electronic device that performs logical, arithmetic, and memory functions by manipulating electronic or magnetic impulses, and includes all input, output, processing, storage, computer software and communication facilities that are connected or related to a computer in a computer system or computer network. Computer system is defined as a set of related computer equipment, hardware, or software.
¶ 102. This instruction took the suggestion of Wis JI — Criminal 2135, a pattern jury instruction, that other statutory definitions may illuminate the meaning of the undefined phrase "computerized communication system."
¶ 103. The circuit court borrowed definitions for "computer" and "computer system" from another statute that defined these words explicitly for purposes of that section of the statutes. See Wis. Stat. § 943.70(l)(am), (e).
¶ 104. Note 3 to the pattern instruction states: " 'Computerized communication system' is not defined in § 948.075. Section 943.70, Computer crimes, provides definitions of 'computer,' and 'computer system.' See § 943.70(l)(am) and (e)."
¶ 105. Thus, the instruction the jury received defined only the words "computer" and "computer system."
¶ 106. There are problems with this approach.
¶ 107. First, the legislature explicitly stated in Wis. Stat. § 943.70 that the definitions of "computer" and "computer system" apply "[i]n this section," i.e., in § 943.70. The legislature did not state that these definitions apply to any or all other sections or chapters of the statutes. Indeed, the legislature made it very clear it was limiting these definitions to § 943.70.
¶ 108. Second, neither of these definitions actually mirrors the text of Wis. Stat. § 948.075. Section *491 948.075 refers to a "computerized communication system." Instructing the jury on what a "computer" or "computer system" is does not illuminate what a "computerized communication system" is. Rather, such instructions might be confusing to the jury. They seem to have confused the circuit court and attorneys at trial.
¶ 109. The definition of "computer" in Wis. Stat. § 943.70(l)(am) refers to "an electronic device." The State and the court of appeals agree, however, that the circuit court misspoke when it told the jury to determine whether the cellphone described in the evidence constitutes a computerized communication system.[27] The system and the device are different. According to the State, the device is used to access a computerized communication system.
¶ 110. Likewise, the definition of "computer system" in Wis. Stat. § 943.70(l)(e) may have confused the jury. The phrase "computerized communication system" refers to a "communication system," not a "computer system." Moreover, as the State argued, a computer (or other similar device) is used to access a computerized communication system. Thus, the jury might again be confused by the addition of this definition.
¶ 111. In sum, without the addition of these two (largely irrelevant and potentially confusing) definitions from other statutes, and the circuit court's erroneous comment that the jury was to "determine whether the phone described in the evidence constitutes a computerized communication system," the jury would have been left with only the words "computerized communication system" as guidance in applying Wis. Stat. § 948.075 to the facts of the instant case.
*492 ¶ 112. Provided with a legislative term of art and no means of defining it, the jury is then left to decide "without any legally fixed standards, what is prohibited and what is not in each particular case."[28] This would permit an unconstitutional, " 'standardless sweep that allows . . . juries to pursue their personal predilections.' "[29]
¶ 113. As a result, I conclude that Wis. Stat. § 948.075 is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, [and] so standardless that it invites arbitrary enforcement."[30]
¶ 114. Accordingly, I conclude that Wis. Stat. § 948.075 is unconstitutional.
II
¶ 115. After this court granted the State's petition for review of the court of appeals' decision overturning McKellips' conviction, McKellips filed a motion in circuit court for release on bail pending review in this court.
¶ 116. It appears from McKellips' filing in this court that the parties were unsure about how to proceed following the court of appeals' decision and this court's decision to grant review. There were also concerns over whether the circuit court had "subject matter jurisdiction" or "competency to proceed."
¶ 117. McKellips sent a letter to the Clerk of the Supreme Court seeking guidance in this matter. The Clerk advised that she does not provide such guidance.
*493 ¶ 118. The circuit court then denied McKellips' motion for release on bail.
¶ 119. McKellips subsequently filed a motion in the court of appeals seeking that court's review of the circuit court's denial of his request for release on bail. The court of appeals dismissed the motion with the following explanation: "Because this appeal is currently pending in the Wisconsin Supreme Court, the motion should be filed in that court."
¶ 120. McKellips then sought relief in this court.
¶ 121. A member of the court refused to allow a discussion of this matter at oral argument.[31] Thus McKellips was incarcerated until this court reached a decision on the merits of the instant case. "[A]ny deprivation of liberty is a serious matter." Argersinger v. Hamlin, 407 U.S. 25, 41 (1972) (Burger, C.J., concurring).
¶ 122. McKellips' filing raises legal questions about the procedure to be followed in circuit courts, the court of appeals, and this court when release on bail is requested following the reversal of a conviction by the court of appeals.
| 123. These questions do not appear to be definitively resolved in the statutes or case law. They include the interpretation and application of Wis. Stat. §§ 809.31 and 969.01; State v. Whitty, 86 Wis. 2d 380, 398, 272 N.W.2d 842 (1978); and Rohl v. State, 90 Wis. 2d 18, 279 N.W.2d 731 (Ct. App. 1979). Moreover, these issues are likely to recur yet may, with the passage of time or subsequent events, become moot. I would have the court address them.
*494 ¶ 124. I attempted to start a discussion about these issues with the parties at oral argument, to no avail. Now, the majority opinion denies the petition for review/motion without explanation. I disagree with the way the court has managed this matter.
¶ 125. For the reasons set forth, I dissent and write separately.
¶ 126. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Although McKellips was acquitted of these counts, and the alleged assaults and exposure are largely irrelevant to the issues in the instant case, the majority opinion recounts these allegations and the associated trial testimony in superfluously graphic detail. The sexual conduct alleged by C.H. is reprehensible. If the court were called upon to condemn such conduct, there would be immediate and unanimous condemnation.
Our task, however, is not to determine whether McKellips deserves to be punished for this alleged conduct. Rather, we are called upon to analyze and apply a statute relating to use of a computerized communication system.

 The jury found McKellips guilty of obstructing an officer. This conviction is not being challenged.

 See majority op., ¶¶ 44-45.

 Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) (quoting Connolly v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).

 Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).

 State v. Popanz, 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983); see also 1 Wayne R. LaFave, Substantive Criminal Law, § 2.3(a), at 146 (2003) ("[T]here is no simple litmus-paper test for determining whether a criminal statute is void for vagueness.").

 Popanz, 112 Wis. 2d at 173; see also Johnson, 135 S. Ct. at 2556; Groyned v. City of Rockford, 408 U.S. 104, 108 (1972) ("Vague laws may trap the innocent by not providing fair warning.").

 See Popanz, 112 Wis. 2d at 173 ("A statute should be sufficiently definite to allow law enforcement officers, judges, and juries to apply the terms of the law objectively to a defendant's conduct in order to determine guilt without having to create or apply their own standards.") (citing State v. Courtney, 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976)); see also Johnson, 135 S. Ct. at 2556 (stating that due process is violated when the government "tak[es] away someone's life, liberty, or property under a criminal law so vague that it fails *480 to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.") (citing Kolender v. Lawson, 461 U.S. 352, 357-58 (1983)). In addition to these two principles, Professor LaFave identifies a third principle not at issue in the instant case: Whether the law provides sufficient space for the exercise of First Amendment rights. See 1 LaFave, supra note 7, § 2.3(a), at 146. This court has recognized this limitation on vague criminal laws as well. See City of Madison v. Baumann, 162 Wis. 2d 660, 672-74, 470 N.W.2d 296 (1991) (stating, in a vagueness challenge to a noise ordinance on First Amendment grounds, that "we look to the face of the ordinance to guard against the possibility that a vague prohibition may deter or give pause to socially desirable conduct or expression").
For further discussions of the void for vagueness doctrine, see, for example, 1 LaFave, supra note 7, § 2.3(a)-(d), at 144-53; 1A Sutherland Statutory Construction § 21:16, at 197-241 (Norman J. Singer & J.D. Shambie Singer eds., 7th ed. 2009); Ryan McCarl, Incoherent and Indefensible: An Interdisciplinary Critique of the Supreme Court's "Void-For-Vagueness" Doctrine, 42 Hastings Const. L.Q. 73, 74 (2014) (critiquing the void for vagueness doctrine as "a confusing conceptual thicket."); Orin S. Kerr, Vagueness Challenges to the Computer Fraud and Abuse Act, 94 Minn. L. Rev. 1561, 1562, 1571-75 (2010) (describing the void for vagueness doctrine in general and noting that the Computer Fraud and Abuse Act "has become so broad, and computers so common, that expansive or uncertain interpretations" of certain statutory language "will render it unconstitutional."); John F. Decker, Addressing Vagueness, Ambiguity, and Other Uncertainty in American Criminal Laws, 80 Denv. U. L. Rev. 241, 248-60 (2002) (sketching the contours of the two principles of the void for vagueness doctrine).

 Kolender v. Lawson, 461 U.S. 352, 358 (1983) (quoting Smith v. Goguen, 415 U.S. 566, 575 (1974)) (internal alteration omitted).

 1 LaFave, supra note 7, § 2.3(c), at 150-51; see also Popanz, 112 Wis. 2d at 173.

 Majority op., ¶ 33.

 Majority op., ¶ 32; see also majority op. ¶ 34. Using the dictionary definitions, the majority concludes that a "computerized communication system" is "[a] group of interacting, interrelated, or interdependent elements forming a complex whole used to exchange thoughts or messages through a computer."

 See Sarah Vaughan, Three Little Words, on Live at the London House (Mercury Records 1958).

 See State v. McKellips, 2015 WI App 31, ¶ 12, 361 Wis. 2d 773, 864 N.W.2d 106.

 Bruno v. Milwaukee Cnty., 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656 (citing Weber v. Town of Saukville, 209 Wis. 2d 214, ¶ 15, 562 N.W.2d 412 (1997)); see also Wis. Stat. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage, but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.").

 Hubbard v. Messer, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676 (quoting Landis v. Phys. Ins. Co. of Wis., Inc., 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893).

 Wis. Stat. § 947.0125(3)(g).

 McKellips, 361 Wis. 2d 773, ¶ 14.

 This statute was enacted after Wis. Stat. § 948.075 took effect.

 McKellips, 361 Wis. 2d 773, ¶ 16 (footnote omitted).

 See McKellips, 361 Wis. 2d 773, ¶ 12.

 The court of appeals concluded, "While we have not derived a complete definition of the term 'computerized communication system,' we have discerned examples or categories that clearly do or do not constitute such a system." See McKellips, 361 Wis. 2d 773, ¶ 17.

 See Grayned, 408 U.S. at 108; see also United States v. Williams, 553 U.S. 285, 304 (2008) (describing a vague statute as one which fails "to provide a person of ordinary intelligence fair notice of what is prohibited . .. .") (emphasis added).

 See 1 LaFave, supra note 7, § 2.3(b), at 147 & n.29 (citing Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982) (noting that the void for vagueness test is less strict in the context of economic regulation because businesses can be expected to consult regulation in advance); Hygrade Provision Co. v. Sherman, 266 U.S. 497, 501-02 (1925) (noting that "the term 'kosher' has a meaning well enough defined to enable one engaged in the trade to correctly apply it, at least as a general thing.")).

 1 LaFave, supra note 7, § 2.3(c), at 151.

 See McKellips, 361 Wis. 2d 773, ¶ 21.

 1 LaFave, supra note 7, § 2.3(c), at 151; see also (internal alteration omitted); Popanz, 112 Wis. 2d at 173.

 Kolender, 461 U.S. at 358 (quoting Smith, 415 U.S. at 575).

 See Johnson, 135 S. Ct. at 2556.

 Oral argument in the instant case took place on April 7, 2016, and is available online through Wisconsin Eye at http://www.wiseye.org/Video-Archive/Event-Detail/evh did/10498.