STATE of Wisconsin, Plaintiff-Respondent,

v.

Leon JEFFERSON, Defendant-Appellant.†

Court of Appeals

*No. 90–1708–CR. Submitted on briefs February 11, 1991.—Decided May 14, 1991.*

(Also reported in 471 N.W.2d 274.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Peter D. Goldberg,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, by *Sally L. Wellman,* assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, J.J.

MOSER, P.J. Leon Jefferson (Jefferson) appeals from an order finding him dangerous and, thereby, revoking his conditional release and recommitting him to the Department of Health and Social Services (DHSS) with placement in Mendota Mental Health Institute (Mendota) pursuant to sec. 971.17(3), Stats. (1987–88).[1] Jefferson first argues that the trial court erred in revoking his conditional release because there were insufficient grounds to do so. He also argues that DHSS erred because it failed to present evidence of the viability of alternative placement. Jefferson finally argues that the trial court erred in not providing a specific alternative placement for him. Because there was sufficient evidence of his dangerousness and because there was no suitable alternative placement for Jefferson, we affirm.

---

[1]Effective January 1, 1991, sec. 971.17, Stats., was amended by secs. 5 and 8, 1989 Wis. Act 334, but these changes do not concern us because the events of this case took place prior to the effective date.

Jefferson suffers from long-standing mental illness variously diagnosed as bipolar disorder without psychotic features and chronic paranoid schizophrenia. He has been examined by the Milwaukee County Mental Health Complex on a number of occasions prior to the events involved herein regarding his ability to stand trial for various charges. Jefferson has been treated in the past at state institutions, the medical clinic in the House of Correction and at various out-patient programs.

On February 3, 1988, while imprisoned at the Milwaukee County House of Correction, and when he was being transferred from one cell to another, Jefferson, without provocation, employed a pencil in a stabbing motion towards Kenneth Pabelick, an officer at the House of Correction, and struck him with his fists a number of times. Jefferson was subsequently charged with battery to a law enforcement officer in violation of sec. 940.20(2), Stats. After a trial to the court, Jefferson was found guilty of that offense but, in a bifurcated hearing, he was found not guilty by reason of mental disease or defect pursuant to sec. 971.165(3)(b), Stats. Jefferson was committed to DHSS pursuant to sec. 971.17(1), Stats., and institutionalized at Mendota on June 28, 1988.

On November 1, 1988, Jefferson petitioned to be reexamined for conditional release pursuant to sec. 971.17(2), Stats. On March 22, 1989, Jefferson was conditionally released with certain rules and special conditions placed on him which required, amongst other things, that he reside at House of Direction until discharge, once a space became available. The order also advised Jefferson that he could be recommitted for violation of one or more of the rules or special conditions.

The record reveals that there were no available openings at House of Direction at that time. On August

10, 1989, the trial court ordered that Jefferson be placed at House of Direction no later than 5 p.m. on September 22, 1989. The trial court record again reveals that there was no available space at House of Direction. Again, on October 19, the trial court revised its order and ordered that Jefferson be placed at House of Direction no later than 5 p.m. on November 30, 1989. A letter from DHSS on November 20 advised the trial court that Jefferson would be placed at Bellwood, Ltd., and that he would be taken there on November 28, 1989. The trial court approved the placement at Bellwood under the original rules and special conditions.

On January 23, 1990, Jefferson absented himself from Bellwood without permission at about 11 p.m., returning at about midnight. Several hours later, on January 24, sometime after 2 a.m., Jefferson again left Bellwood without permission and his whereabouts were unknown until about 9:30 a.m. that morning, when he telephoned Bellwood to advise the staff that he had voluntarily signed himself into the Milwaukee County Mental Health Complex.

On January 29, 1990, Bellwood, through its coordinator of clinical services representative, Mary Wiarman (Wiarman), advised DHSS that it would not take Jefferson back after his release from the Milwaukee County Medical Complex. The letter recites that from about January 1 to his elopement, he made numerous sexual comments to the female staff, claimed that the staff was racially prejudiced against him, and that he might assault someone there. The letter also noted that after his elopement, when he was told he would not be taken back, Jefferson threatened to kill Wiarman with a gun, and blow up Bellwood.

On January 30, 1990, DHSS petitioned the trial court to revoke Jefferson's conditional release pursuant

to sec. 971.17(3), Stats., for two reasons. First, Jefferson violated special condition A of the conditional release by his unauthorized elopement from Bellwood. Second, that Jefferson violated rule 1 of the conditional release requiring him to avoid conduct which violated state statutes, municipal and county ordinances, or which is not in the best interest of the public welfare or Jefferson's rehabilitation.

There was a preliminary hearing held March 16, 1990, at the close of which the trial court ordered interim placement at Mendota. At the close of the revocation hearing the trial court found by clear and satisfactory evidence, that Jefferson had violated special condition A of the conditional release order by leaving Bellwood and had violated rule 1 of the conditional release order by threatening Wiarman's life. It held that because of such violation he was dangerous to the safety of himself and others. The trial court ordered the conditional release revoked and Jefferson recommitted to Mendota.

To meet minimum due process at mental recommitment proceedings pursuant to sec. 971.17(3), Stats., a person is entitled to the same procedural rules or steps that are required or fashioned in probation or parole revocation proceedings.[2] Those minimum requirements are:

> (1) an initial hearing to justify detention pending a final commitment hearing; (2) written notice of the claimed violation; (3) disclosure of the evidence against the subject; (4) an opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to confront and cross-examine adverse witnesses (unless the hearing office specifi-

---

[2]*See State v. Mahone,* 127 Wis. 2d 364, 370, 379 N.W.2d 878, 881 (Ct. App. 1985).

cally finds good cause for not allowing confrontation); (6) a neutral and detached hearing body, and (7) a written statement by the fact-finder(s) as to the evidence relied upon and reasons for revocation of the conditional discharge.[3]

At such hearings, the trial court's findings of fact will not be overturned unless clearly erroneous.[4] The trial court's application of those facts to the law, such as recommitment for dangerousness here, is a question of law which appellate courts review independently from the trial courts.[5] As a matter of law, violations of conditions of probation or parole are sufficient grounds for revocation.[6]

## GROUNDS FOR REVOCATION

Jefferson does not argue that he was denied procedural due process as outlined in *Mahone* for mental recommitment proceedings except that he seems to say that he did not get the written statement by the fact finder as to the evidence relied on and the reasons for revocation of the conditional discharge. It is difficult to understand that part of the appellate argument because Jefferson is appealing from an order that recites that he violated conditions of his conditional release and because of that he is recommitted. The trial court's reasons are further explicated in that part of the record where the trial court recites that Jefferson violated the

---

[3]*Id.* at 370, 379 N.W.2d at 881–82; *see also Morrissey v. Brewer,* 408 U.S. 471, 489 (1972).

[4]*See In re K.N.K.,* 139 Wis. 2d 190, 198, 407 N.W.2d 281, 285 (Ct. App. 1987); *see also* sec. 805.17(2), Stats.

[5]*See In re K.N.K.,* 139 Wis. 2d at 198, 407 N.W.2d at 285.

[6]*See State ex rel. Cutler v. Schmidt,* 73 Wis. 2d 620, 622, 244 N.W.2d 230, 231 (1976).

written conditions for his conditional release by eloping from Bellwood, threatening Wiarman and threatening to blow up Bellwood. Jefferson's leaving Bellwood without permission violated special condition A of his conditional release. Furthermore, his statements violated rule 1 of Jefferson's conditional release, in that it required him to obey the laws. Threatening to blow up a building at the very least, is potentially a violation of statute, sec. 947.015, Stats., and use of the telephone to threaten to inflict injury or physical harm is a potential violation of sec. 947.012(1), Stats. Thus, there was sufficient evidence before the trial court to find that Jefferson was dangerous to himself and others, and therefore, as a matter of law, his conditional release was terminated and he was properly recommitted to Mendota.

## ALTERNATIVE PLACEMENT

Jefferson next argues that because DHSS failed to consider alternative placement as opposed to revocation, the trial court therefore erred in recommitting him because he was denied due process.

Section 971.17(3), Stats., sets forth no procedural due process steps for the revocation of a mental health patient's conditional release. However, we have previously held that the minimum due process requirements for recommitment of conditionally released insanity acquittees are:

> (1) an initial hearing to justify detention pending a final commitment hearing; (2) written notice of the claimed violation; (3) disclosure of the evidence against the subject; (4) an opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifi-

cally finds good cause for not allowing confrontation); (6) a neutral and detached hearing body, and (7) a written statement by the fact-finder(s) as to the evidence relied upon and reasons for revocation of the conditional discharge.[7]

There is nothing in the record to indicate that these requirements were not complied with.

The consideration of alternative placement is not one of the above listed due process requirements, nor is it one of the two stated requirements for revocation under sec. 971.17(3), Stats. That statute requires only that the conditions of the release have not been adhered to and that Jefferson, in this case, poses a danger to the safety of others or himself.[8] Clearly, in this case both of these requirements are satisfied, and demand the revocation of Jefferson's conditional release. First, Jefferson's two elopements from Bellwood, and his threats of harm to Wiarman and Bellwood, contrary to law, violated his conditional release conditions. Second, in that those threats were directed towards the safety of others, they also constituted a sufficient reason for revoking Jefferson's conditional release. Other than the foregoing analysis, there is nothing that a trial court needs to consider when revoking an acquittee's conditional release, including the alternative placement of the acquittee.

## FASHIONING A SPECIFIC REMEDY

Lastly, Jefferson argues that the trial court erred in revoking and recommitting him based on the immediate lack of alternative placement insofar as he met the standards for release and he was thus denied a constitutional

[7]*Mahone,* 127 Wis. 2d at 370, 379 N.W.2d at 881–82.
[8]*See Mahone,* 127 Wis. 2d at 375, 379 N.W.2d at 884.

remedy affecting that release. Here, Jefferson is arguing that there was no immediate placement available (despite the preceding argued issue) and that the trial court erred by not fashioning a remedy and ordering that it be accomplished.

██

This argument fails because it is wrongly premised on the fact that Jefferson met the standards for release. He did not. The trial court specifically held that, because he violated a condition of his conditional release that required him to stay at Bellwood until released and because he also violated a special condition of the conditional release when he threatened to kill a member of Bellwood's staff and blow the building up, he was therefore dangerous to himself and others. This required that Jefferson's conditional release be revoked, and that he be recommitted and placed at Mendota. It follows that the trial court did not deny him due process in failing to fashion a specific remedy suitable to his needs.

*By the Court.*—Order affirmed.