COURT OF APPEALS
DECISION
DATED AND FILED

June 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP267-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2010CF363

**IN COURT OF APPEALS
DISTRICT III**

---

**STATE OF WISCONSIN,**

   **PLAINTIFF-RESPONDENT,**

 **V.**

**WALTER J. LANGE,**

   **DEFENDANT-APPELLANT.**

---

APPEAL from orders of the circuit court for Chippewa County: JAMES M. ISAACSON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Walter Lange appeals circuit court orders revoking his conditional release from the custody of the Department of Health Services

("the department") and returning him to institutional care. Lange argues that the State failed to establish that he was dangerous and that a finding of dangerousness is a constitutional prerequisite for revoking his conditional release. We conclude that the evidence presented at Lange's revocation hearing was sufficient to establish Lange's dangerousness. Accordingly, we affirm the court's orders.

## BACKGROUND

¶2    We briefly summarize the relevant procedural history in order to give necessary context to our discussion. In 2010, Lange was charged with sexual assault of a child under sixteen years of age as a persistent repeater. In an amended Information, Lange was charged with two counts of sexual assault of a child under sixteen years of age. Lange ultimately pleaded no contest, but not guilty by reason of mental disease or defect ("NGI"), to one of the counts, with the other count being dismissed and read in. The circuit court committed Lange to institutional care for twenty years.

¶3    In August 2013, the circuit court ordered Lange to be conditionally released to community supervision. In April 2014, the department petitioned for revocation of Lange's conditional release, alleging that Lange was "aggressive toward group home staff … causing them to become fearful for their safety." In June 2014, the court revoked Lange's conditional release based on his violation of a rule or condition.

¶4    Lange was conditionally released a second time in September 2015. In September 2017, the department filed a petition for revocation, alleging that Lange was found to be in possession of a memory card containing images of nude women as well as a picture of a clothed teenage girl, who "reminded him of one of his victims." The department also alleged that Lange prevented further review of

2

the memory card by forcibly taking it out of a staff computer, putting it in his mouth, chewing it, and swallowing it. The circuit court again determined that Lange had violated a rule or condition of his conditional release, and it ordered revocation of Lange's release a second time.

¶5    This background leads to Lange's third conditional release, the revocation of which is the subject of this appeal. Lange filed a petition for conditional release in April 2018. In June 2018, the circuit court ordered the department and the county to submit a plan for community supervision. After requesting two extensions due to difficulties in finding placement for Lange, forensic case manager Holly Pavloski submitted a conditional release plan to the court in December 2018. The aspects of the plan that are relevant to this appeal included that Lange would be placed in a group home; would meet regularly with his case manager, Pavloski; and would receive treatment services from a variety of community providers, including AODA services from Lake Superior Community Clinic and behavioral health therapy from Lake Superior Behavioral Health Clinic. The plan noted that Lange was "a prolific letter writer" and required Lange to receive preapproval for any contacts with pen pals. The plan also barred Lange from accessing the internet. Finally, the plan required Lange to receive preapproval for any telephone contacts, based on recent reports that Lange had made several attempts to contact a minor female by telephone. On January 10, 2019, the court ordered Lange to be conditionally released pursuant to the plan proposed by the department.

¶6    On March 21, 2019, the State filed a petition to revoke Lange's conditional release, signed by Wisconsin Department of Corrections Agent Nicole Gingery. The immediate rule violation that prompted revocation was that Lange had allegedly climbed out of his bedroom window at his group home in the

middle of the night, stood at the edge of the property by the street, and returned to his room ten minutes later. While investigating this incident, Gingery observed that Lange had piles of mail from unapproved contacts in his room, as well as several pictures of women from the website "WriteAPrisoner.com," prompting concerns that Lange was further violating the conditions of his release by accessing the internet.

¶7 The revocation petition also alleged that Lange had committed several additional violations of the rules and conditions of his release over the previous month. Specifically, Lange had made telephone calls to unapproved numbers; Lange had visited a shopping mall (a teenage hangout that was an exclusion zone for Lange) despite explicit instructions not to do so; during an AODA appointment, Lange had made a nurse uncomfortable by commenting that she "looked young"; and Lange had made lewd comments about women while visiting a Walmart with group home staff. During this last incident, group home staff were concerned that Lange would have acted on impulse if staff had not been present. Furthermore, and notably, the group home had decided to withdraw Lange's placement due to concerns for female staff that had to be present in the home with Lange, as well as future concerns for a female resident who was residing in a home that would soon be merged with the group home where Lange resided.

¶8 On March 29, 2019, Pavloski submitted a letter to the circuit court regarding Lange's conduct during his third conditional release. Pavloski set forth a detailed time line of Lange's rule violations. Regarding Lange's comment that the nurse at his AODA appointment "looked young," Pavloski added that this incident was the second time staff at the clinics where Lange was receiving AODA services and behavioral health treatment had expressed concern about

Lange's conduct toward women. As a result of these incidents, the director of behavioral health and substance use services at Lake Superior Community Health Clinic questioned whether she could "guarantee the safety of their female staff and underage female clients when Mr. Lange is at the facility." Pavloski concluded that Lange's behavior was a violation of the terms of his conditional release and that "this behavior is a risk to both Mr. Lange's and the community's safety."

¶9 The circuit court conducted a revocation hearing on April 15, 2019, and heard testimony from Gingery and Lange, as well as rebuttal testimony from Pavloski. Lange largely denied the allegations, further testifying that the group home was "filthy" and that he had encountered tensions with staff within sixteen hours of his arrival. Among other information, Gingery and Pavloski testified generally consistently with the statements in the revocation petition and Pavloski's letter, respectively.

¶10 At the hearing, the circuit court found that Lange "wasn't very believable" and determined that Lange had committed several violations, including exiting the group home in the middle of the night, making lewd comments at a Walmart, and exchanging letters with unapproved contacts. The court noted that any one violation would probably not be enough for revocation, and then held the matter over in order to determine whether "[t]he totality of all of them" justified revocation. The court explained, "I don't want us to be in a position where we're making him get out and re-offend by sexually assaulting someone before I find there is enough cause to revoke him."

¶11 In a written decision issued on April 18, 2019, the circuit court agreed with the State that Lange had violated a rule or condition of his release and that the safety of others required revocation of Lange's conditional release. The

court specifically found that the State had satisfied its burden of proving, by clear and convincing evidence, that Lange had left the group home. The court further stated that revocation was required "[g]iven Mr. Lange's history and rules to provide for safety of females and difficulty in placing Mr. Lange." Based on this decision, the court issued an order revoking Lange's conditional release, as well as an order placing Lange in institutional care. The placement order stated, "On … 4/18/2019, the court determined that conditional release would … pose a significant risk of bodily harm to the defendant or others, or of serious property damage."

## DISCUSSION

¶12    A defendant who has been adjudicated NGI is committed to the department. WIS. STAT. § 971.17(1) (2019-20).[1]  As part of this commitment, the circuit court must determine whether institutional care is warranted. Sec. 971.17(3)(a). The court may place the defendant in institutional care only "if it finds by clear and convincing evidence that conditional release … would pose a significant risk of bodily harm to [the defendant] or to others or of serious property damage." *Id*.

¶13    A defendant placed in institutional care may petition for conditional release after six months. WIS. STAT. § 971.17(4)(a).  Similar to a defendant's initial placement in institutional care, the circuit court may deny conditional release only if "it finds by clear and convincing evidence that [conditional release]

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

6

would pose a significant risk of bodily harm to [the defendant] or to others or of serious property damage." Sec. 971.17(4)(d).

> In making this determination, the court may consider, without limitation because of enumeration, the nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

*Id.*

¶14 When a circuit court orders conditional release, the department submits a plan for the defendant's treatment and services. WIS. STAT. § 971.13(3)(d). After release, the defendant is subject to the conditions set by the court as well as the department's rules. Sec. 971.17(3)(e). The department may take a defendant back into custody if the department believes that the defendant has violated a condition or rule, "or that the safety of the person or others requires that conditional release be revoked." *Id.* Upon detention, the department has seventy-two hours to file a petition to revoke the order for conditional release. *Id.* The circuit court must then hold a hearing on the petition within thirty days. *Id.*

¶15 At this revocation hearing, the State "has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked." *Id.* "If the court determines after hearing that any rule or condition of release has been violated, or that the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release" and order placement in institutional care. *Id.*

¶16    On appeal, Lange first makes a due process argument regarding the valid grounds for revoking conditional release. Lange points us to the United States Supreme Court's decision in *Foucha v. Louisiana*, 504 U.S. 71 (1992), together with our supreme court's decision in *State v. Randall*, 192 Wis. 2d 800, 532 N.W.2d 94 (1995),[2] which both addressed the substantive due process requirements for committing an NGI defendant. Lange argues that "[b]oth cases make clear that the committees' release would be constitutionally required unless they were still dangerous." Lange then argues that "the same due process minimums" should apply when the circuit court is revoking an NGI committee's conditional release, and that WIS. STAT. § 971.17(3)(e) "falls short" of those due process minimums. Specifically, § 971.17(3)(e) "seems to let a court reconfine an NGI committee based solely on a violation of the rules of his conditional release." As such, Lange argues that the statute is inconsistent with *Foucha* and *Randall I*.

¶17    Based on these authorities, Lange urges us to construe WIS. STAT. § 971.17(3)(e) to require a finding of dangerousness in order to revoke an NGI defendant's conditional release. If we accept this argument, Lange contends that we must reverse the circuit court's revocation decision because the evidence presented at the revocation hearing was only sufficient "to establish a few minor violations" but "fell short of proving him dangerous."

---

[2] The defendant in *Randall* subsequently filed additional appeals relating to his continued NGI commitment. *See State v. Randall*, 222 Wis. 2d 53, 58-59, 586 N.W.2d 318 (Ct. App. 1998); *State v. Randall*, 2011 WI App 102, 336 Wis. 2d 399, 802 N.W.2d 194. In this appeal, Lange relies on both the initial decision in 1995 and the later decision in 2011. To avoid confusion, we refer to the 1995 decision as "*Randall I*" and the 2011 decision as "*Randall III*."

¶18     The State asks us to reject Lange's due process argument as undeveloped or forfeited.[3]     Alternatively, the State asks us to find that the evidence was sufficient to establish that Lange presented a danger to others.

¶19     We agree with the State's second argument. The circuit court did, in fact, determine that Lange was dangerous. Specifically, in its written decision granting the State's petition for revocation, the court determined that "the safety of others require[d] the conditional release to be revoked." Likewise, the court's order for placement referred to its determination "that conditional release would pose a significant risk of bodily harm to the defendant or others." Thus, the court did find that Lange was dangerous, regardless of whether such a finding was necessary to revoke his conditional release. Accordingly, if we affirm the finding of dangerousness, we need not determine whether such a finding is necessary to revoke Lange's conditional release.

¶20     What remains, then, is Lange's second argument, which is that the evidence was not sufficient to support the circuit court's determination regarding

---

[3] The State points out that Lange appears to be "waging a facial constitutional challenge to WIS. STAT. § 971.17(3)(e)." If so, Lange bears "a heavy burden because he must prove that [the statute] is unconstitutional beyond reasonable doubt." *Winnebago Cnty. v. Christopher S*., 2016 WI 1, ¶33, 366 Wis. 2d 1, 878 N.W.2d 109. The State further contends that Lange has not sufficiently developed a facial constitutional challenge.

In his reply brief, Lange states that the State has "misconstrue[d]" his argument as a facial constitutional challenge to the revocation statute. Instead, Lange clarifies that he is only making a "sufficiency-of-the-evidence challenge to the circuit court's determination that the State proved dangerousness." Lange further clarifies that "[t]he only reason the constitutional proof-of-dangerousness mandate is relevant is that it shows the circuit court's error was not harmless." We need not resolve any disputes between the parties regarding these issues because, as stated herein, we conclude the circuit court found Lange to be dangerous and we affirm that determination.

Lange's dangerousness. The parties do not fully agree about the appropriate standard of review that we should apply to the court's decision in this regard. Lange directs us to *State v. Randall*, 2011 WI App 102, ¶¶13-14, 336 Wis. 2d 399, 802 N.W.2d 194 ("*Randall III*"), in which we evaluated the denial of conditional release using a sufficiency of the evidence test.

¶21 In contrast, the State directs us to *State v. Jefferson*, 163 Wis. 2d 332, 337-38, 471 N.W.2d 274 (Ct. App. 1991), in which we reviewed a circuit court's order revoking a conditional release using the following standard: "[T]he [circuit] court's findings of fact will not be overturned unless clearly erroneous. The [circuit] court's application of those facts to the law, such as recommitment for dangerousness here, is a question of law which appellate courts review independently from the [circuit] courts." (Footnote omitted.) Although the State contends that our decision in *Jefferson* is more on point, the State agrees with Lange's suggestion that the same standard of review should apply to a denial of conditional release and revocation of conditional release.

¶22 We need not determine whether *Jefferson* or *Randall III* sets forth the appropriate standard of review because we conclude that either standard would lead to the same result in this particular case. We therefore apply the standard urged by Lange, as described in *Randall III*. Specifically, in determining whether the sufficiency of the evidence supports the circuit court's order, "we give deference to the [circuit] court's determination of credibility and evaluation of the evidence and draw on its reasoning and adopt the [circuit] court's reasonable inferences." *Randall III*, 336 Wis. 2d 399, ¶14. We will uphold the revocation order "if credible evidence exists to support the [circuit] court's finding of dangerousness." *Id.*, ¶17.

¶23  We now turn to the question of whether credible evidence exists to support a finding of Lange's dangerousness.  Lange observes that WIS. STAT. § 971.17(3)(e), which governs revocation of conditional release, "does not specify the factors relevant to the court's dangerousness determination."  Instead, Lange directs us to § 971.17(3)(a) and (4)(d), which address dangerousness in the context of orders for initial placement and conditional release.  These statutory provisions both state that the circuit court may consider "the nature and circumstances of the crime, the person's mental history and present mental condition, [and] where the person will live," among other factors.  Sec. 971.17(3)(a), (4)(d).

¶24  Lange argues that the circuit court's written decision "referenced just a few of the aforementioned factors"—namely, the loss of Lange's placement in the group home, the difficulty in placing Lange thereafter, and Lange's "history"—but that these factors do not prove dangerousness.  Regarding his placement issues, Lange agrees that the group home closure and the difficulty of finding a new placement "were relevant considerations for the court," and he further agrees that "a protracted housing search was likely."  Lange argues, however, that a more appropriate response would have been for "Lange … to spend time in jail while [the department] tracked down a male-only facility willing to accept him as a resident."

¶25  We are unpersuaded by Lange's effort to undermine the significance of the loss of his group home placement.  In particular, Lange's argument ignores the fact that Lange lost this placement—and is being preemptively denied alternative placement—because of the group home's concerns for the safety of female staff and a female resident.  Those concerns are tied to Lange's repeated actions, including numerous examples of his objectifying women.  As such, the

11

difficulty surrounding Lange's placement is directly intertwined with the circuit court's determination regarding Lange's dangerousness.

¶26　Lange also asks us to disregard the circuit court's "vague reference to Lange's history" because more detail is required to "assess whether the court's reliance on Lange's history was reasonable." We are again unpersuaded. Lange's argument ignores the fact that Lange's "history" includes his NGI plea to child sexual assault.[4] The court underscored the connection between this history and Lange's rules violations during the revocation hearing, when the court explained that it did not "want us to be in a position where we're making him get out and re-offend by sexually assaulting somebody." We conclude that the court reasonably considered Lange's history of sexual violence and lewd behavior toward women in evaluating whether his rule violations were evidence of dangerousness. *See* **State v. Burris**, 2004 WI 91, ¶72, 273 Wis. 2d 294, 682 N.W.2d 812 ("A court is not forced to wait until overtly dangerous acts have been committed; it is not required to ignore indications that a sexually violent person has disregarded the rules repeatedly in the past and will do so in the future.").

¶27　Lange's argument also overlooks the circuit court's reference, in its written decision regarding revocation, to Lange's violating "rules to provide for safety of females." The court elaborated on this particular factor during the revocation hearing when it determined that Lange "knows the rules" but "is not

---

[4] In his reply brief, Lange argues that his history of child sexual assault is not evidence of dangerousness because his rule violations all relate to adult women, rendering his history of child sexual assault a "mismatch." Lange's argument overlooks record evidence relating to underage females, such as the fact that Lange ignored explicit instructions not to go to the mall, which is a teenage hangout location that was off-limits to him. At any rate, Lange's history of sexual assault is a basis for determining that he is dangerous, regardless of any victim's age.

obeying" them. The court further explained that Lange is "a very smart individual" who "hemmed and hawed about what he did or didn't do" and "wasn't very believable." Intentional rule breaking in the manner Lange did and his refusal to accept responsibility both support a finding of dangerousness, particularly in light of Lange's conviction for sexual assault of a child. *See Randall III*, 336 Wis. 2d 399, ¶¶26-29 (explaining that Randall had refused to take responsibility for repeated rule violations and concluding that "Randall's devious, secretive and intentional rule-breaking behavior, similar to his behavior at the time of his crimes, demonstrates that he continues to be dangerous.").

¶28 Finally, Lange argues that the State's focus on his rule violations does not support a finding of dangerousness because "[n]one of those violations … involved threats, risk-taking, endangerment of others, acts of intimidation, noncompliance with medication, or anything else showing dangerousness."[5] We fail to see how Lange's decision to exit the group home in the middle of the night is not evidence of "risk-taking." Lange's view also

---

[5] As part of this last argument, Lange suggests that the State did not even allege that he was dangerous because it "believed it only had to prove a rule violation to secure Lange's revocation." To support this argument, Lange points to the prosecutor's statement at the hearing that, "[i]n order to have his conditional release revoked, [Lange] just has to violate a condition of conditional release."

The State contends that Lange is taking an isolated statement out of context, and it points to other record references to Lange's dangerousness, including Pavloski's letter to the circuit court. In that letter, Pavloski stated that "Mr. Lange's unwillingness to comply with his court-ordered Treatment Plan and Conditional Release Rules is in violation of the terms of his Conditional Release and this behavior is a risk to both Mr. Lange's and the community's safety." The State also points to the prosecutor's closing argument, in which he stated that Lange's immediate rule violation was "just the tip of the iceberg," and that his rule violations were "worrisome because of why he is on conditional release." We agree with the court that the State did allege dangerousness.

discounts his comments about women while on a supervised trip to Walmart which led staff to believe that he "would have acted on impulse ... were they not present." Likewise, the record establishes that Lange's conduct prompted safety concerns at both his group home and at his behavioral healthcare providers. These safety concerns provide additional support for the circuit court's finding of dangerousness.

¶29 At any rate, Lange's last argument is not tethered to any of the statutory factors that he asserts that a circuit court is permitted to use when establishing dangerousness. *See* WIS. STAT. § 971.17(3)(a), (4)(d). Both of these statutory subsections provide that the court may consider "the nature and circumstances of [Lange's] crime, [Lange's] mental history and present mental condition, where [Lange] will live, how [Lange] will support himself … what arrangements are available to ensure that [Lange] has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication." *See id.* The court's focus on Lange's history, knowing violations of rules intended to protect females, and resulting loss of placement all connect directly to the statutory factors for establishing dangerousness.

¶30 Using the standard of review urged by Lange, we may affirm an order on conditional release "if credible evidence exists to support the [circuit] court's finding of dangerousness." *See **Randall III***, 336 Wis. 2d 399, ¶17. Lange does not argue that the evidence of his rule violations and placement difficulties was not credible. To the contrary, Lange has conceded that the State established rule violations and Lange further agrees that his loss of placement is a relevant consideration. Accordingly, we conclude that credible evidence exists to support the circuit court's determination regarding Lange's dangerousness if he remained on conditional release. We therefore affirm the court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.